UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
FRANCISCO TAVERAS, FRANCISCO
MERCEDES, WAYNE JOHNSON, and
JAYDEN PERDOMO, in their individual
capacities and on behalf of others similarly
situated,

                            Plaintiffs,

              -against-

NORTHEAST LANDSCAPE & MASONRY
ASSOCIATES, INC.,
       f/k/a Northeast Landscape Associates, Inc.
       f/k/a A P Michaels Landscaping Ltd.
       f/k/a A P Michaels Contracting, Ltd.
       f/k/a A  P Michaels Site Design
       f/k/a A.P. Michaels Sight Design, Inc.
N-EAST SITE CONTRACTING, INC.,
PETER GEORGE PERGOLA, an individual,
PETER M. PERGOLA, an individual, and
ANTHONY PERGOLA, an individual,

                         Defendants.
-------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

16 Civ. 00834 (CS) (JCM)

To the Honorable Cathy Seibel, United States District Judge:

      Plaintiffs Francisco Taveras, Francisco Mercedes, Wayne Johnson and Jayden Perdomo

(collectively, "Plaintiffs") commenced this action pursuant to the Fair Labor Standards Act

("FLSA") and New York Labor Law ("NYLL"), to recover unpaid wages, liquidated damages,

NYLL statutory damages, prejudgment interest and attorneys' fees. (Docket Nos. 1, 29).  On

May 11, 2018, the Court granted Plaintiffs' motion for a default judgment against defendants

Northeast Landscape & Masonry Associates, Inc. ("Northeast"), N-East Site Contracting, Inc.

("N-East"), Peter George Pergola ("Pergola Sr.") and Peter M. Pergola ("Pergola Jr.")

(collectively, "Defendants").[1] (Docket No. 57).  This matter was referred to the undersigned to conduct a damages inquest. (Docket No. 55).  For the reasons below, the undersigned respectfully recommends that the court award damages in favor of Plaintiffs and against Defendants in the total amount of $102,283.79.

## I.  BACKGROUND

### A.  Procedural History

Plaintiffs Francisco Taveras and Francisco Mercedes commenced this action by filing their complaint ("Complaint") on February 3, 2016. (Docket No. 1).  On October 14, 2016, Plaintiffs amended their complaint ("Amended Complaint") to add Wayne Johnson and Jayden Perdomo as named plaintiffs. (Docket No. 29).  After Defendants failed to answer the Amended Complaint, Plaintiffs moved for a default judgment. (Docket No. 38). In support of their motion for default, Plaintiffs provided declarations itemizing their claimed damages. (Docket No. 44). Plaintiffs' counsel also submitted a declaration in support of Plaintiffs' request for attorneys' fees and costs. (Docket No. 45).  Defendants did not oppose Plaintiffs' motion.  The Honorable Cathy Seibel granted Plaintiffs' motion for a default judgment and referred the matter to the undersigned to determine damages and attorneys' fees. (Docket Nos. 55, 57).

### B.  Factual Background

Given Defendants' default, the well-pleaded allegations contained in Plaintiffs' Amended Complaint are deemed to be true, except for those relating to damages. *See Ortega v. JR Primos 2 Rest. Corp.*, No. 15 Civ. 9183 (JCF), 2017 WL 2634172, at *2 (S.D.N.Y. June 16, 2017).  The facts summarized below are taken from the Amended Complaint, the declarations submitted by Plaintiffs in support of their motion for a default judgment and accompanying exhibits.

---

[1] Plaintiffs voluntarily dismissed defendant Anthony Pergola from this action pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). (Docket No. 47).

Defendants Northeast and N-East were a single integrated masonry company with gross revenues in excess of $500,000 per year.  (Am. Compl., Docket No. 29 at ¶¶ 8–22).  Defendants Pergola Sr. and Pergola Jr. actively participated in the business of the company and exercised substantial control over the functions of its employees, including Plaintiffs.  (*Id*. at ¶¶ 23–30).  Both Pergola Sr. and Pergola Jr. had the authority to hire and fire employees, set their rate of pay, and direct their activities. (*Id*. at ¶¶ 25, 29).

Plaintiff Francisco Taveras worked for Defendants as a mason tender from April 22, 2015[2] to September 22, 2015. (Declaration of Francisco Taveras ("Taveras Decl.") [3] at ¶¶ 4, 8).  Defendants paid Taveras $20 per hour. (*Id.* at ¶ 10).  From April to August 2015, Taveras generally arrived around 6:30 a.m. or 6:45 a.m., and worked until 4:00 p.m. or 4:30 p.m., Monday through Friday, with a half hour lunch break. (*Id.* at ¶ 9).  On Saturdays, Taveras worked from 8:00 a.m. or 9:00 a.m. until around 3:30 p.m., with a half hour lunch break. (*Id.*).  However, because Taveras' schedule varied, he estimates that he worked approximately 58 hours per week. (*Id.* at ¶ 10).  Defendants only paid Taveras for eight hours of work Monday through Friday, and he wasn't compensated for any work performed on Saturday. (*Id.* at ¶¶ 11, 13).  Beginning in August 2015, Taveras arrived at work around 7:00 a.m. and stopped working on Saturdays entirely. (*Id.* at ¶ 11).  Consequently, Taveras estimates that he worked 47-50 hours

---

[2] Plaintiffs' filings present conflicting information as to Taveras' start date.  First, the Amended Complaint states that Taveras began working for Defendants during the first week of April 2015. (Am. Compl., Docket No. 29 at ¶ 37).  Taveras' declaration does not provide the exact date when he began working for Defendants but claims that he was employed for five months. (Taveras Decl. at ¶ 8). A prior declaration submitted in support of Plaintiffs' motion for attachment maintains that Taveras started working for Defendants at the end of April. (Docket No. 44-4 at ¶ 2). To calculate Taveras' damages, the Court finds that Taveras began working for Defendants on April 22, 2015.  This date is consistent with Taveras' claim that he worked for Defendants for five months, and that he was terminated on September 22, 2015. *See Garcia v. Badyna*, No. 13-CV-4021 (RRM)(CLP), 2014 WL 4728287, at *3, n. 4 (E.D.N.Y. Sept. 23, 2014) (resolving inconsistencies on damages inquest within plaintiff's damages calculation chart, his declaration, and the complaint to conform with the most consistent reading of the three filings).

[3] Refers to the Declaration of Francisco Taveras in Support of Plaintiffs' Motion for Default Judgment and Damages, filed on March 13, 2018. (Docket No. 44-7).

per week during this time. (*Id.* at ¶ 12).  At some point, Taveras made verbal complaints to Pergola Sr. about Defendants' pay practices and deductions to his weekly wages.  (Am. Compl., Docket No. 29 at ¶¶ 119–20).  Following his complaints, Taveras was terminated on September 22, 2015. (*Id.* at ¶ 121–23).

Plaintiff Francisco Mercedes worked for Defendants as a mason tender from March 30, 2015[4] to October 1, 2015. (Declaration of Francisco Mercedes ("Mercedes Decl.")[5] at ¶¶ 4, 8); (Am Compl., Docket No. 29 at ¶ 48).  Defendants paid Mercedes $20 per hour. (Mercedes Decl. at ¶ 10).  During his employment, Mercedes generally worked from 7:00 a.m. to 3:30 p.m., Monday through Friday, and 9:00 a.m. to 2:30 p.m. on Saturdays, with a half hour lunch break each day. (*Id.* at ¶ 9).  However, Mercedes' schedule varied. (*Id.* at ¶ 11).  Consequently, Mercedes estimates that he worked 45 hours per week. (*Id.*).  Defendants only paid Mercedes for eight hours of work Monday through Friday, and he wasn't compensated for work performed on Saturday. (*Id.* at ¶ 10).  Therefore, Mercedes stopped working on Saturdays beginning in August 2015. (*Id.*).  Further, Defendants did not pay Mercedes at all during September 2015.  (*Id.* at ¶ 13).

Plaintiff Wayne Johnson worked for Defendants as a mason tender for approximately three months from May 2, 2015 to August 1, 2015.[6] (Declaration of Wayne Johnson ("Johnson

---

[4] Neither the Amended Complaint, nor Mercedes' declaration provides the exact date Mercedes started working for Defendants.  However, the Amended Complaint alleges that Mercedes began working for Defendants at the end of March 2015. (Am Compl., Docket No. 29 at ¶ 48).  Thus, the Court uses March 30, 2015, the last full work week beginning in March 2015, as Mercedes' start date for calculating his damages.

[5] Refers to the Declaration of Francisco Mercedes in Support of Plaintiffs' Motion for Default Judgment and Damages, filed on March 13, 2018. (Docket No. 44-8).

[6] Johnson's declaration is internally inconsistent and presents information that conflicts with the facts presented in the Amended Complaint.  First, Johnson's declaration states that he started working for Defendants in May 2015 and stopped working for Defendants "on or about" August 2015—totaling either three or four months of employment depending on the exact date when he stopped working. (Johnson Decl. at ¶ 4).  The declaration also claims that Johnson worked for Defendants for a total of seven months, (*id.* at ¶ 8), and worked through October 1, 2015, (*id.* at ¶ 10).  The Amended Complaint claims that Johnson worked for Defendants from May 2, 2015 to August 2015.

Decl.") [7] at ¶¶ 8, 10).  During this time, Johnson was paid $30 per hour.  (*Id.* at ¶ 10).  Johnson worked from 6:30 a.m. or 7:00 a.m. to 3:30 p.m., Monday through Friday, with a half hour lunch break each day. (*Id.* at ¶ 9).  Johnson also worked from 7:00 a.m. to 3:30 p.m. on Saturdays, with a half hour lunch break. (*Id.*).  Johnson claims that somedays he worked longer than 3:30 p.m. and estimates that he worked 50.5 hours per week. (*Id.* at ¶ 10).  Throughout his employment, Defendants only paid Johnson for forty hours of work each week. (*Id.* at ¶ 11).

Plaintiff Jayden Perdomo worked for Defendants as a mason tender for about twenty workdays between July and August 2015.  (Declaration of Jayden Perdomo ("Perdomo Decl.") [8] at ¶¶ 8, 10).  During this time, Perdomo generally worked from 6:00 a.m. to 5:00 p.m., Monday through Friday, with a half hour lunch break each day—totaling 52.5 hours of work per week. (*Id.* at ¶ 9).  Defendants paid Perdomo $20 per hour. (*Id.* at ¶ 10).  Perdomo was not paid for any time worked over forty hours each week. (*Id.* at ¶ 11).

Throughout their employment, Plaintiffs were frequently paid late. (Am. Compl., Docket No. 29 at ¶¶ 55, 66, 76, and 99).  Further, Defendants never provided Plaintiffs with a wage notice or wage statements. (Taveras Decl. at ¶¶ 15–18); (Mercedes Decl. at ¶¶ 13–16); (Perdomo Decl. at ¶¶ 15–18); (Johnson Decl. at ¶¶ 13–16).

---

(Am. Compl., Docket No. 29 at ¶ 59).  Accordingly, the Court finds that Johnson worked for Defendants for three months from May 2, 2015 to August 1, 2015, for the purposes of calculating his damages. *See Garcia*, 2014 WL 4728287, at *3, n. 4.

[7] Refers to the Declaration of Wayne Johnson in Support of Plaintiffs' Motion for Default Judgment and Damages, filed on March 13, 2018. (Docket No. 44-9).

[8] Refers to the Declaration of Jayden Perdomo in Support of Plaintiffs' Motion for Default Judgment and Damages, filed on March 13, 2018. (Docket No. 44-10).

## II. DISCUSSION

### A. Burden of Proof on Damages

The Court must accept as true all the well-pleaded allegations in the complaint pertaining to liability since a default judgment was entered. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "Nonetheless, since the allegations in the complaint must be 'well-pleaded,' we are required to examine whether those factual allegations, if deemed true, establish liability." *Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 311 (S.D.N.Y. 2014) (citations omitted). The Court has reviewed the allegations set forth in the Amended Complaint and has determined that they clearly establish liability. Thus, the Court will now calculate actual damages.

When calculating damages, the allegations relating to damages "are not deemed admitted by virtue of a default." *PAPS v. GME Entm't, Inc.*, No. 09 Civ. 2508 (MHD), 2012 WL 5873584, at *6 (S.D.N.Y. Nov. 19, 2012); *see also Galeana*, 120 F. Supp. 3d at 313. "While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematic computation." *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974). A court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154 (2d Cir. 1999). The Court has "wide discretion" in conducting this inquiry. *Anglo-Iberia Underwriting Mgmt. Co. v. Lodderhose*, 282 F. Supp. 2d 126, 129 (S.D.N.Y. 2003). As to the calculation of damages, Plaintiffs are entitled to all reasonable inferences from the evidence they offer. *See Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981) (citation omitted).

"An employee who brings an action under the FLSA for unpaid wages must prove that he performed the work and was not compensated properly for his time." *Polit v. Glob. Foods Int'l Corp.*, No. 14-CV-07360 (SN), 2017 WL 1373907, at *2 (S.D.N.Y. Apr. 13, 2017). Under both state and federal law, an employer is required to maintain "records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him." 29 U.S.C. § 211(c); *see also* 12 N.Y.C.R.R. § 142-2.6(a) ("Every employer shall establish, maintain and preserve for not less than six years, weekly payroll records . . . ."). "Where the defaulting defendant does not make any submission on a damages inquest, a court must assess whether the plaintiff has provided a sufficient basis for the court to determine damages." *Polit*, 2017 WL 1373907, at *2. Plaintiffs may meet their burden of proof by relying on recollection alone to establish that they performed work for which they were not properly compensated. *Id.* "Moreover, in the absence of rebuttal by defendants . . . [the employee's] recollection and estimates of hours worked are presumed to be correct." *Id.*

The Court's damages inquiry may be conducted "based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Sabatino v. Emeana*, No. CV-97-7637 (SMG), 2000 WL 34017111, at *2 (E.D.N.Y. Aug. 1, 2000). The Second Circuit has held that pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, "it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (alteration in original) (citations omitted); *see also Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *PAPS*, 2012 WL 5873584, at *7. The Court may rely on detailed affidavits to evaluate the proposed amount of damages. *See Fustok v. ContiCommodity Services, Inc.*, 122 F.R.D. 151, 156 (S.D.N.Y. 1988),

*aff'd* 873 F.2d 38 (2d Cir. 1989).  The affidavits and other documentary evidence submitted by Plaintiffs in the instant action provide a sufficient basis from which the Court can reasonably ascertain damages and, therefore, no hearing is required.

## B.  Unpaid Regular Wages

Both state and federal law mandate that employees be paid at least minimum wage for the first forty hours worked in a given work week. 29 U.S.C. § 206(a); N.Y. Comp. Codes R. & Regs. Tit. 12; NYLL § 652(1).  Under federal law, "[t]he FLSA allows recovery for unpaid 'straight' time only up to the minimum wage rate. *Villar v. Prana Hosp., Inc.*, No. 14 Civ. 8211(RA)(JCF), 2017 WL 1333582, at *4 (S.D.N.Y. Apr. 11, 2017), *report and recommendation adopted*, 2018 WL 3579841 (S.D.N.Y. July 25, 2018) (quoting *Kernes v. Global Structures, LLC*, No. 15 Civ. 659, 2016 WL 880199, at *3 (S.D.N.Y. March 1, 2016)). NYLL Section 198(3), on the other hand, permits plaintiffs to recover the full amount of their agreed-upon wages as a remedy to a substantive violation brought under Article 6 of the NYLL. *See Hernandez v. NJK Contractors, Inc.*, No. 09-CV-4812 (RER), 2015 WL 1966355, at *42 (E.D.N.Y. May 1, 2015) ("The NYLL expressly provides that employees are entitled to recover all unpaid wages.") (citing § 198(3)).  NYLL Section 191, a substantive statute under Article 6, provides that a "manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned." NYLL § 191(1)(a)(i).  A "manual worker" is defined as "a mechanic, workingman, or laborer." *Id.* § 190(4).  Under this frequency of payments provision, employers who wrongfully withhold earned wages are liable "for all unpaid wages at the promised rate of pay, *i.e.* the daily rate." *Wing Kwong Ho v. Target Const. of NY*, Corp., No. 08-CV-4750 (KAM)(RER), 2011 WL 1131510, at *14 (E.D.N.Y. Mar. 28, 2011) (citing § 191).

An FLSA wage claim does not "preempt" a wage claim brought under state law. *Wicaksono v. XYZ 48 Corp.*, No. 10 Civ. 3635(LAK)(JCF), 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011) (internal citation removed), *report and recommendation adopted*, 2011 WL 2038973 (S.D.N.Y. May 24, 2011).   "[A] plaintiff may recover under the statute which provides the greatest amount of damages." *Id.*   Here, the Court will only analyze Plaintiffs' claims under the NYLL because that will provide them with the greatest amount of damages. *See* NYLL §§ 198(3), 191(1)(a)(i); *Martinez v. Dannys Athens Diner Inc.*, No. 16-CV-7468 (RJS), 2017 WL 6335908, at *3 (S.D.N.Y. Dec. 5, 2017) ("Where, as here, a plaintiff is entitled to damages under both federal and state wage law, the Court has discretion to award damages 'under the statute providing the greatest amount of relief.'") (quoting *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017)).

Plaintiffs Taveras, Johnson and Perdomo fail to establish damages for unpaid regular wages,[9] but they do establish their entitlement to unpaid overtime wages to a reasonable degree of certainty. (Taveras Decl. at ¶¶ 12–13); (Perdomo Decl. at ¶¶ 10–11); (Johnson Decl. at ¶¶ 10–11).   Plaintiff Mercedes, however, claims that Defendants did not pay him at all during September 2015, (Mercedes Decl. at ¶ 13), which implicates New York's frequency of payments provision, NYLL § 191.[10]   Therefore, Mercedes is entitled to damages for all unpaid wages at his

---

[9] Taveras, Johnson and Perdomo do not provide sufficient evidence for the Court to determine the number of regular hours for which they were not compensated. (First Dodson Decl., Docket No. 44 at ¶¶ 50, 55 and 59).  Furthermore, to the extent Plaintiffs assert that they should be compensated for their daily meal break, it is without merit because they admit that their meal breaks were bona fide. *See Hernandez v. Jrpac Inc.*, No. 14 Civ. 4176 (PAE), 2016 WL 3248493, at *27 (S.D.N.Y. June 9, 2016) ("Under both the FLSA and NYLL, 'all of the time worked during a continuous workday is compensable, save for bona fide meal breaks.'") (quoting *Hart v. Rick's Cabaret Int'l, Inc.*, 60 F. Supp. 3d 447, 475 (S.D.N.Y. 2014)).

[10] Defendants are also liable to Mercedes under the NYLL minimum wage provision because they failed to pay Mercedes any wages throughout September 2015. NYLL § 652(1) ("Every employer shall pay each of its employees for each hour worked a wage of not less than . . . $9.00 on and after December 31, 2015 . . ."). However, Mercedes is not entitled to damages under NYLL § 652 and NYLL §§ 191, 198(3), because "[p]laintiffs are only entitled to recover under one statute for the same hours of unpaid wages; double recovery of the same wages and related damages is not permitted," *Gonzales v. Gan Israel Pre-Sch.*, No. 12-CV-06304 (MKB), 2014 WL 1011070, at *11

agreed-upon hourly rate. NYLL §§ 191, 198(3); *see Schalaudek v. Chateau 20th St. LLC*, No. 16-CV-11 (WHP)(JLC), 2017 WL 729544, at *7 (S.D.N.Y. Feb. 24, 2017) (awarding plaintiff unpaid wages following defendant's default based on his estimation that he was not paid at all), *report and recommendation adopted and modified on other grounds*, 2017 WL 1288859 (S.D.N.Y. Apr. 6, 2017).  During this time, Mercedes worked approximately 22 days, or 176 regular hours, at $20 per hour. (Mercedes Decl. at ¶¶ 11–13).  Accordingly, I respectfully recommend that the court award Mercedes $3,520 ($20 x 176 hours) in damages for unpaid regular wages.

## C.  Overtime Compensation

The FLSA and the NYLL provide for recovery of unpaid overtime wages. 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2.  While both statutes hold that overtime wages are paid at the rate of one and one-half times the "regular rate of pay," each statute sets forth different methods of calculating this rate. *Quiroz v. Luigi's Dolceria, Inc.*, No. 14-CV-871 (VVP), 2016 WL 2869780, at *3 (E.D.N.Y. May 17, 2016).  Pursuant to the FLSA, "the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.113 (2016).  However, under the NYLL, "the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.5 (2016).

Courts do not grant duplicative awards for overtime pay under both the FLSA and NYLL to prevent plaintiffs from a double recovery for the same loss. *E.g., Quiroz*, 2016 WL 2869780,

---

(E.D.N.Y. Mar. 14, 2014).  Moreover, Mercedes' damages under NYLL §198(3) would be greater because NYLL § 652 only allows for recovery of minimum wage. *Id.*

at *3.  However, "[i]f a plaintiff is entitled to damages under both federal and state wage law, the Court has discretion to award [that plaintiff] damages under the statute providing the greatest amount of relief." *Gamero*, 272 F. Supp. 3d at 498 (internal quotations omitted).  Therefore, the Court will calculate Plaintiffs' damages for unpaid overtime under the NYLL because the statute of limitations is longer, and, thus, Plaintiffs' NYLL claims "subsume their award under the FLSA." *Hernandez*, 2016 WL 3248493, at *31.

Plaintiffs all contend that they were not paid for any time worked above forty hours each week. (Taveras Decl. at ¶ 13); (Mercedes Decl. at ¶ 12); (Perdomo Decl. at ¶ 11); (Johnson Decl. at ¶ 11).  Given the Defendants' default, the Court accepts Plaintiffs' estimates and turns to the calculation of overtime damages under the NYLL. *See Kernes*, 2016 WL 880199, at *6 (noting that "in the absence of rebuttal by defendants . . . [the employee's] recollection and estimates of hours worked are presumed to be correct.") (internal quotation marks and citation omitted) (alteration in original).

### i.  Francisco Taveras

Taveras contends that his hourly rate was $20 per hour. (Taveras Decl. at ¶ 10).  Therefore, under the NYLL, his overtime rate of pay was $30 per hour. N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.5 (2016).  From April 22, 2015 to August 1, 2015, Taveras estimates that he worked 58 hours per week.[11] (Taveras Decl. at ¶ 10).  Multiplying Taveras' overtime rate with the weekly overtime hours worked ($30.00 x 18), totals $540.00 per week in overtime pay for work performed between April 22, 2015 and August 1, 2015.  Because Taveras worked

---

[11] Plaintiffs' submissions do not indicate whether their estimated weekly work hours incorporate required deductions for their daily bona fide lunch breaks.  *See Hernandez*, 2016 WL 3248493, at *27.  However, after calculating Plaintiffs' weekly hours using their daily mean start and end time, less their daily lunch breaks, the Court concludes that the provided estimates generally appear to incorporate reductions for lunch breaks. (*See* Taveras Decl. at ¶ 9); (Mercedes Decl. at ¶ 9); (Johnson Decl. at ¶ 9);(Perdomo Decl. at ¶ 9).  Accordingly, the Court does not deduct the meal breaks from the estimates provided by Plaintiffs when calculating Plaintiffs' overtime damages.

approximately 14 full weeks with this schedule, he is entitled to $7,560.00 in overtime pay for this period.[12]

Additionally, Taveras is entitled to $525.00 for work performed from August 2, 2015 to September 22, 2015 using this same method.  During this period, Taveras claims that he worked approximately 47 hours per week because he arrived at work around 7:00 a.m. and stopped going to work on Saturdays.  (Taveras Decl. at ¶¶ 11, 12).  Accordingly, he is entitled to $210.00 ($30.00 x 7) per week in overtime pay.  After multiplying this amount by the seven weeks that Taveras worked during this time, the Court concludes that Taveras is entitled to an additional $1,470.00 in overtime pay.

Accordingly, the undersigned recommends that the court award Taveras $9,030.00 in unpaid overtime wages.

**ii.  Francisco Mercedes**

Mercedes estimates that he worked 45 hours per week—or five hours of overtime each week—from March to August 2015.[13] (Mercedes Decl. at ¶¶ 9, 11).  Multiplying his weekly overtime hours by his overtime rate (5 x $30.00), Mercedes is owed $150.00 of overtime pay for each full week worked.  Because Mercedes worked approximately 18 full weeks from March 2015 to August 2015, the undersigned recommends that the court award Mercedes $2,700.00 in overtime wages.

---

[12] Based on Taveras' estimates, he did not work enough hours from April 22, 2015 through April 25, 2015 to qualify for overtime pay during that week.

[13] In August 2015, Mercedes stopped working on Saturdays, (Mercedes Decl. at ¶ 10), and, thus, did not earn any overtime from August 2015 through October 1, 2015.

### iii. Wayne Johnson

Johnson is entitled to $6,142.50 in overtime wages for work performed between May 2, 2015 and August 1, 2015.  The Court arrives at this figure by multiplying Johnson's weekly overtime hours by his overtime rate (10.5 x $45.00), (Johnson Decl. at ¶ 9), and further multiplying that by the number of full weeks he worked between May 2, 2015 and August 1, 2015.  Consequently, Johnson has shown with reasonable certainty that he is entitled to $6,142.50 in overtime wages.

### iv. Jayden Perdomo

Perdomo claims that he worked for Defendants for twenty workdays between July 2015 and August 2015. (Perdomo Decl. at ¶¶ 8–10). During those weeks, Perdomo estimates that he worked 52.5 hours each week. (*Id.* at ¶ 10).  As a result, Perdomo is entitled to $1,500.00 in overtime pay.  This is the sum of Perdomo's overtime rate multiplied by his weekly overtime hours, and further multiplied by the number of full weeks worked ($30.00 x 12.5 x 4).[14]

### D. Liquidated Damages

Plaintiffs also request liquidated damages under the FLSA and NYLL. (*See* Am. Compl., Docket No. 29 at ¶¶ 100, 117).

---

[14] Plaintiffs also contend that they are entitled to spread-of-hours wages. (Am. Compl., Docket No. 29 at ¶ 104). "New York law requires, separate from any unpaid minimum wage or overtime award, that 'an employee whose workday is longer than ten hours must receive one hour's pay at the basic minimum hourly wage rate.'" *Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 555 (S.D.N.Y. 2017) (quoting *Galeana*, 120 F. Supp. 3d at 319). However, Plaintiffs do not request specific amounts for their alleged spread-of-hours damages. (*See generally* Declaration of Penn Dodson, Esq., Docket No. 44).  Nevertheless, Taveras, Mercedes and Johnson did not establish that they worked more than ten hours in a given work day.  While Perdomo worked approximately eleven hours each day, he is not entitled to spread-of-hours wages because his regular rate of pay was greater than New York's minimum wage. *See Xiao Dong Fu v. Red Rose Nail Salon Inc.*, No. 15 Civ. 7465(KPF), 2018 WL 1472508, at *5 (S.D.N.Y. Mar. 26, 2018) ("The NYLL's spread-of-hours requirement only applies to employees paid at New York's minimum wage rate (aside from restaurant and all-year hotel employees, who are entitled to spread-of-hours pay regardless of pay rate).").  Accordingly, the undersigned does not recommend that the court award Plaintiffs spread-of-hours damages.

"An employer who violates the minimum wage and overtime provisions of the FLSA is presumptively liable to the affected employees, in addition to back-pay, for 100% of the unpaid wages as liquidated damages." *Valle v. Gordon Chen's Kitchen LLC,* 254 F. Supp. 3d 665, 677 (S.D.N.Y. 2017) (citing 29 U.S.C. § 216(b)).  To avoid liability for liquidated damages, the employer must show that that the FLSA violation "was committed 'in good faith and that he had reasonable grounds for believing that his act or omission was not a violation' of the FLSA." *Id.* at 678 (quoting 29 U.S.C. § 260).

Similarly, the NYLL automatically provides for liquidated damages "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." NYLL § 198(1–a); *see Ahmed v. Subzi Mandi, Inc.*, No. 13-CV-3353 (CBA)(RER), 2014 WL 4101224, at *7 (E.D.N.Y. May 27, 2014) (concluding that plaintiffs were "automatically entitled to NYLL liquidated damages unless defendants prove that they acted in good faith"), *report and recommendation adopted*, 2014 WL 4101247 (E.D.N.Y. Aug. 18, 2014).  The NYLL permits a plaintiff to recover 100% of his unpaid wages in liquidated damages.  *See Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015) (citing NYLL § 198(1–a) as amended before and after Apr. 9, 2011).  "The statutory text of the liquidated damages provisions of the present NYLL is not identical to that of the FLSA . . . However, courts have not substantively distinguished the federal standard from the current state standard of good faith." *Id.* (internal citations omitted).

Given Defendants' default, the record is devoid of any argument that Defendants had a good faith belief that their underpayment was not in violation of either the FLSA or NYLL. *See Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14-CV-10234(JGK)(JLC), 2016 WL 4704917, at *15 (S.D.N.Y. Sept. 8, 2016) *report and recommendation adopted*, 2016 WL 6879258

14

(S.D.N.Y. Nov. 21, 2016) ("Courts deem defendants' actions willful where they have defaulted, . . . and, consequently, such defaulting defendants will have '[o]bviously ... made no showing of good faith.'" (quoting *Guaman v. J & C Top Fashion, Inc.*, No. 14 Civ. 8143(GBD)(GWG), 2016 WL 791230, at *1 (S.D.N.Y. Feb. 22, 2016)) (internal citation omitted) (alteration in original). Accordingly, the undersigned recommends that the court award liquidated damages in the amounts of their actual damages: $9,030.00 to Taveras, $6,220.00 to Mercedes, $6,142.50 to Johnson, and $1,500.00 to Perdomo.[15]

## E. NYLL Statutory Damages

Plaintiffs seek statutory damages under New York's wage notice and wage statement requirements. (Am. Compl., Docket No. 29 at ¶¶ 112–13).

### i. The Wage Notice Requirement

NYLL Section 195(1) requires that employers provide each employee with a wage notice at the time of hiring that contains information such as "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; [and] the regular pay day designated by the employer." NYLL § 195(1)(a). "Since February 27, 2015, an employee who was not provided a wage notice within ten business days of the first day of employment can recover damages of $50 for each workday that a violation occurs or continues to occur, not to exceed $5,000." *Java v. El Aguila Bar Rest. Corp.*, No. 16-CV-6691 (JLC), 2018 WL 1953186, at *12 (S.D.N.Y. Apr. 25, 2018) (internal quotation marks and citation omitted).

---

[15] To the extent Plaintiffs seek compounding liquidated damages under both the FLSA and NYLL, it should be denied as duplicative. *See Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59, 60 (2d Cir. 2016) (clarifying that amendments to the NYLL have eliminated any reasons to continue awarding duplicative liquidated damages under both the FLSA and NYLL) (summary order); *Cabrera*, 2017 WL 1289349, at *8 ("Subsequent to the Second Circuit's decision in *Chowdhury*, courts have declined to award cumulative liquidated damages for unpaid wages on or after April 9, 2011, the effective date of the second amendment to the NYLL ...").

Here, each Plaintiff claims that Defendants failed to provide him with a wage notice at any point during his employment. (Taveras Decl. at ¶¶ 15–18); (Mercedes Decl. at ¶¶ 15–18); (Perdomo Decl. at ¶¶ 13–16); (Johnson Decl. at ¶¶ 13–16).  "By virtue of the default in this case, the Court accepts as true [Plaintiffs'] allegation[s] that [they] never [were] given any [wage notices]." *Xochimitl*, 2016 WL 4704917, at *14.  Consequently, each Plaintiff is entitled to statutory damages for wage notice violations. *See id.* (awarding plaintiff statutory damages for wage-statement and wage-notice violations on default inquest based on plaintiff's representations that defendants never provided him with the same).

Plaintiffs Taveras and Mercedes are entitled to $5,000.00 because neither was provided with a wage notice for a number of workdays that, when multiplied by $50, exceeds the applicable statutory maximum of possible liability.  Johnson is entitled to $3,950.00 because he worked for Defendants for 79 workdays without receiving a wage notice.  Finally, Perdomo is entitled to $1,000.00 in damages because he only worked for Defendants for twenty days without receiving the required wage notice.

### ii.  The Wage Statement Requirement

NYLL Section 195(3) provides separate grounds for liability.  This section requires that employers:

> furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

NYLL § 195(3).  During the relevant period at issue, the penalty for violating the NYLL wage statement statute was $250 per work day, but not to exceed $5,000.00. *Pastor v. Alice Cleaners,*

*Inc.*, No. 16-CV-7264 (JLC), 2017 WL 5625556, at *5 (S.D.N.Y. Nov. 21, 2017) (citing NYLL § 198(1-d)).

Similar to their wage notice allegations, Plaintiffs claim that they never received wage statements from Defendants. (Taveras Decl. at ¶¶ 15–18); (Mercedes Decl. at ¶¶ 15–18); (Perdomo Decl. at ¶¶ 13–16); (Johnson Decl. at ¶¶ 13–16).  Accordingly, each Plaintiff is entitled to $5,000 in statutory damages under NYLL Section 195(3) because each swore that he was not provided a wage statement for at least twenty work days, which exceeds the $5,000.00 statutory limit. *See Xochimitl*, 2016 WL 4704917, at *14.

### F.  Taveras' Retaliation Claim

Taveras brings a retaliation claim under both the FLSA and NYLL. 29 U.S.C. § 215(a)(3); NYLL § 215(1)(a).  Specifically, Taveras claims that Defendants fired him after he complained to Pergola Sr. that he was not being paid for all the hours he worked. (Am. Compl., Docket No. 29 at ¶¶ 118–32).

"[I]t is unlawful for any person 'to discharge . . . any employee because such employee has filed any complaint . . . related to [the FLSA].'" *Thompson v. Jennings & Hartwell Fuel Oil Corp.*, No. 14-CV-1857 (RJD)(LB), 2015 WL 5437492, at *4 (E.D.N.Y. Aug. 27, 2015) (quoting 29 U.S.C. § 215(a)(3)).  To state a prima facie case of retaliation under the FLSA, a plaintiff must show "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) (citation omitted).  Furthermore, oral complaints to a supervisor are a protected activity "'when a reasonable, objective person would have understood the employee to have put the employer on notice that the employee is asserting statutory rights

17

under [the FLSA].'" *Greathouse v. JHS Security Inc.*, 784 F.3d 105, 115–16 (2d Cir. 2015)

(quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011)).

 The elements of a retaliation claim under the NYLL are substantially the same as one

brought under the FLSA, however, under the NYLL an internal complaint to an employer is

explicitly protected. *See* NYLL § 215(1)(a)(i).  Furthermore, the "protection afforded to workers

under the NYLL retaliatory termination provision is 'more broadly worded' than in the FLSA."

*Thompson*, 2015 WL 5437492, at \*4 (quoting *Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 263

(S.D.N.Y. 2008)), *report and recommendation adopted*, 2015 WL 5444939 (E.D.N.Y. Sept. 15,

2015).

 Here, Taveras sufficiently establishes a prima facie claim of retaliation under both the

FLSA and NYLL.  Taveras participated in a protected activity when he complained to Pergola

Sr. in late July 2015 that he was "not receiving overtime and not being paid for all hours

worked." (Am. Compl., Docket No. 29 at ¶ 127); *see also* (Docket No. 44-4 at 58, ¶¶ 7, 20).

Under a reasonable, objective person standard, Defendants were on notice that Taveras was

asserting his statutory rights under both the FLSA and NYLL because he explicitly based his

complaint on his right to overtime wages. *See Thompson*, 2015 WL 5437492, at \*4 (finding that

employee put employer on notice that he was asserting his FLSA rights by explicitly referencing

unpaid overtime in his complaint).  In response, Taveras was fired on September 22, 2015. (Am.

Compl., Docket No. 29 at ¶¶ 121–23, 129).  Due to the temporal proximity between Taveras'

complaint in late July 2015 and his termination on September 22, 2015, Plaintiff has plausibly

established a causal link between the two events. *Kim v. Goldberg, Weprin, Finkel, Goldstein,

LLP*, 987 N.Y.S.2d 338, 343 (1st Dep't 2014) ("plaintiff's termination two months after the

second complaint may establish the necessary causal nexus between the protected activity and

her discharge") (NYLL retaliation claim); *c.f., Ashok v. Barnhart*, 289 F. Supp. 2d 305, 315 (E.D.N.Y. 2003) ("A period of only two months between a protected activity and an adverse action may permit a reasonable jury to find the acts to be temporally proximate and causally related.") (Title VII retaliation claim).  Moreover, Defendants have defaulted, and therefore, have offered no evidence to rebut Taveras' prima facie case of retaliation.  Accordingly, Defendants are liable for Taveras' retaliatory termination under the FLSA and NYLL.  *See Thompson* , 2015 WL 5437492, at *4.

Taveras requests $5,000.00 in damages for his retaliatory termination.[16] (First Dodson Decl. at ¶¶ 44–45). [17]  This amount is reasonable. *See, e.g, Thompson*, 2015 WL 5437492, at *7 (awarding plaintiff $36,400.00 in damages for his retaliation claim where he worked for defendants for only six weeks at $20 per hour).  Accordingly, the undersigned respectfully recommends that the court award Taveras $5,000.00 in damages for his retaliatory termination.

## G.  Prejudgment Interest

Plaintiffs seek prejudgment interest under the NYLL on their unpaid regular and overtime wages.[18] (Am. Compl., Docket No. 29 at ¶¶ 110, 117).  "A plaintiff who prevails on a NYLL wage claim is entitled to prejudgment interest on any 'underpayment' of wages." *Salustio*, 264 F. Supp. 3d at 557 (quoting NYLL § 198(1–a)).  Prejudgment interest, however, does not apply to violations of the wage statement and notice provisions, or for an award of liquidated damages.

---

[16] While Plaintiff brings a retaliation claim under both the FLSA and NYLL, he requests a single compensatory reward.

[17] Refers to the Declaration of Penn Dodson, Esq. filed on March 13, 2018 in support of Plaintiffs' motion for default judgment and damages. (Docket No. 44).

[18] Under federal law, prejudgment interest may not be awarded in addition to liquidated damages. *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988).  New York, however, permits an award of both liquidated damages and prejudgment interest because it "views liquidated damages as punitive, and not compensatory, such that pre-judgment interest is not a duplicative damages award." *Romero v. Rung Charoen Sub, Inc.*, No. 16 Civ. 1239 (VMS), 2017 WL 4480758, at *14 (E.D.N.Y. Sept. 30, 2017).

*See id.* (awarding prejudgment interest on unpaid wages and overtime, but not on statutory or liquidated damages).

In New York, prejudgment interest is set at a statutory rate of nine percent per year. N.Y. C.P.L.R. §§ 5001, 5004.  The interest is calculated:

> from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.

N.Y. C.P.L.R. § 5001.

Here, Plaintiffs' claims for unpaid overtime wages accrued on their first day of work because Defendants never paid them overtime throughout their employment.  Accordingly, the Court adopts the reasonable intermediate date approach. *See Romero v. Rung Charoen Sub, Inc.*, No. 16 Civ. 1239 (VMS), 2017 WL 4480758, at *14 (E.D.N.Y. Sept. 30, 2017) (adopting reasonable intermediate date approach where claim for unpaid overtime wages began on plaintiff's first day of work but continued to increase throughout his employment).

Using this method, Taveras' midpoint date is July 7, 2015 because he worked for Defendants from April 22, 2015 to September 22, 2015.  Therefore, Taveras is entitled to prejudgment interest at the rate of nine percent per annum, not compounded, on his overtime claim totaling $9,030.00 from July 7, 2015 until the date the judgment is entered.

Mercedes' midpoint date is June 30, 2015 because he worked for Defendants from March 30, 2015 to October 1, 2015.  Using the reasonable intermediate approach, Mercedes is entitled to prejudgment interest at the rate of nine percent per annum, not compounded, on his regular hours and overtime claims totaling $6,220.00 from June 30, 2015 until the date the judgment is entered.

Similarly, Johnson's midpoint date is June 16, 2015 because he worked for Defendants from May 2, 2015 to August 1, 2015.  Therefore, Johnson is entitled to prejudgment interest at the rate of nine percent per annum, not compounded, on his overtime claim totaling $6,142.50 from June 16, 2015 until the date the judgment is entered.

Finally, Perdomo's midpoint date is August 1, 2015 because he worked for Defendants for four weeks between July 2015 and August 2015.  Accordingly, Perdomo is entitled to prejudgment interest at the rate of nine percent per annum, not compounded, on his overtime claim totaling $1,500.00 from August 1, 2015 until the date the judgment is entered.

## H.  Attorneys' Fees and Costs

Plaintiffs seek to recover $20,000.00 in attorneys' fees and $2,472.69 in costs billed by their counsel. (Declaration of Penn Dodson, Esq. ("Dodson Attorneys' Fees Decl.") at ¶ 32);[19] (Docket No. 45-1, 11–12).[20]

The FLSA and the NYLL provide for an award of reasonable attorneys' fees to a prevailing plaintiff in a wage-and-hour action. 29 U.S.C. § 216(b); NYLL § 198.  District courts have broad discretion when awarding fees but must clearly explain the reasons supporting an award. *Ortega*, 2017 WL 2634172, at *6.  Courts ordinarily award a lodestar fee, which is the product of the prevailing market rate for lawyers in the district and the number of hours a reasonable attorney would spend to litigate the case effectively. *Id.*  The plaintiff must produce contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done. *Id.*

---

[19] Refers to the Declaration of Penn Dodson, Esq. filed on March 13, 2018 in support of Plaintiffs' request for attorneys' fees and costs. (Docket No. 45).

[20] Refers to Plaintiffs' counsel's billing invoice attached to the Dodson Attorneys' Fees Decl. (Docket No. 45-1).

The Court "retains discretion to determine . . . what constitutes a reasonable fee." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (internal quotation marks and citation omitted).  In assessing the reasonableness of attorneys' fees, the Court must: "(1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the reasonable hourly rate by the number of hours reasonably expended to determine the presumptively reasonable fee; and (4) make an appropriate adjustment to arrive at the final fee award." *Creighton v. Dominican Coll.*, No. 09-CV-3983 (TZ), 2011 WL 4914724, at *6 (S.D.N.Y. Aug. 16, 2011).  However, "there is no precise rule or formula for determining a proper attorney's fees award; rather, the district court should exercise its equitable discretion in light of all relevant factors." *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 48 (S.D.N.Y. 2015) (internal quotation marks and citation omitted).

Here, Penn Dodson, Plaintiff's lead attorney, seeks 30.9 hours at $400 per hour from November 2015 to September 2016, and $450 per hour from October 2016 to February 2018.[21] (*Compare* Docket No. 45-1 at 1–5, *with id.* at 6–11).  Ms. Dodson has been practicing law for approximately fifteen years and regularly represents clients in employment matters. (Dodson Attorneys' Fees Decl. at ¶¶ 3–4).  Alexander Gastman, an associate, worked 19.8 hours and seeks $325 per hour.  (Docket No. 45-1 at 13).  Gastman practiced law for approximately six years and began practicing employment law in 2014.  (Dodson Attorneys' Fees Decl. at ¶¶ 17–21).  One experienced paralegal, Tara Hodges, worked 61.9 hours at rates ranging from $5 to $125 per hour depending on the type of work performed. (Dodson Attorneys' Fees Decl. at ¶¶ 24–27); (Docket No. 45-1 at 13).

---

[21] Dodson billed at rates ranging from $40 to $75 per hour for administrative and clerical work. (*See generally* Docket No. 45-1).

**i. Reasonable Hourly Rate**

A reasonable hourly rate must be in line with the rates "prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (internal quotation marks and citation omitted); *see also Rosado v. City of N.Y.*, No. 11-CV-4285 (SAS), 2012 WL 955510, at *4 (S.D.N.Y. Mar. 15, 2012) ("The relevant community to which the court should look is the district in which the case was brought.") (internal quotation marks and citation omitted). "The 'court may determine the reasonable hourly rate by relying both on its own knowledge of comparable rates charged by lawyers in the district' and 'on evidence proffered by the parties.'" *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 188 F. Supp. 3d 333, 338 (S.D.N.Y. 2016) (citation omitted).

Considering the work involved here and the experience of the attorneys seeking fees, the Court finds that the requested hourly rates require adjustment. While Dodson is an experienced labor and employment attorney, partners are commonly awarded between $300 and $400 per hour in FLSA cases within the Southern District of New York. *Hernandez v. JRPAC Inc.*, 14 Civ. 4176 (PAE), 2017 WL 66325 at *2–3 (S.D.N.Y. Jan. 6, 2017). Additionally, Dodson was awarded $360 per hour in a recent FLSA and NYLL wage-and-hour action in this District in which the defendants defaulted. *Greathouse v. JHS Sec. Inc.*, No. 11 Civ. 7845(PAE)(GWG), 2017 WL 4174811, at *4 (S.D.N.Y. Sept. 20, 2017), *affirmed*, 735 F. App'x 25 (2d Cir. 2018). The instant matter, like *Greathouse*, "presented no special complexity" given Defendants' default. *Id.* Furthermore, the court in *Alvarez v. Sterling Portfolio Inv., LP* awarded Ms. Dodson $400 per hour. No. 16 Civ. 5337(CBA)(VMS), 2017 WL 8790990, at *8 (E.D.N.Y. Dec. 13, 2017). Moreover, the undersigned found several inaccuracies and drafting errors within Dodson's declaration attached to Plaintiffs' motion for default, which does not lend support to

counsel's requested rate.[22] (*See* First Dodson Decl. at ¶¶ 28, 30–31, 50–51).  Accordingly, the Court recommends that Dodson's rate be reduced to $400 per hour.[23]

The Court recommends that Gastman be awarded an hourly rate of $275. While Gastman had six years of legal experience, he only practiced employment law for two years prior to filing the instant action. (Dodson Attorneys' Fees Decl. at ¶¶ 18–21).  Further, Gastman was awarded $200 per hour in an FLSA wage-and-hour case in this District in 2015, *see Bazignan v. Team Castle Hill Corp.*, No. 13 Civ. 8382(PAC), 2015 WL 1000034, at *5 (S.D.N.Y. Mar. 5, 2015), and $250 per hour in the Eastern District of New York in 2017, *Alvarez*, 2017 WL 8790990, at *8.  Accordingly, the Court recommends reducing Gastman's hourly rate to $275.

Finally, the Court believes that Hodges' requested rate of $125 per hour is in line with fees awarded for paralegal work within this District. *See Denoyer*, 2018 WL 1738217, at *6 (awarding three experienced paralegals $125 per hour in FLSA wage-and-hour case). Accordingly, the Court finds Hodges' requested rate to be reasonable.

**ii.  Reasonable Hours Expended**

"The party seeking attorneys' fees bears the burden of demonstrating that the claimed . . . number of hours [is] reasonable," and the "amount of time expended must be adequately supported by contemporaneous time records that specify relevant dates, time spent, and work done." *Creighton*, 2011 WL 4914724, at *6 (internal quotation marks and citations omitted).

---

[22] For example, Dodson used the pronoun "she" to refer to her four male clients on several occasions, (First Dodson Decl. at ¶¶ 28, 30-31), and discussed Johnson's work history when calculating Mercedes' damages, (*id.* at ¶¶ 50-51). Further, Dodson requests liquidated damages under both the FLSA and NYLL, but then assumes no "stacking" of liquidated damages later in her declaration. (*Compare id.* at ¶ 29, *with id.* at ¶¶ 43, 51, 56, and 60).

[23] The Court further recommends using this rate for all hours worked since "[t]he rates used by the court should be current rather than historic hourly rates" to compensate for the delay in payment. *Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006) (internal quotation marks and citation omitted); *see LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998).  Further, the Court finds that Dodson's rates for administrative tasks are reasonable. (*See* Docket No. 45-1 at 12-13).

"Adjustments must be made to the number of hours expended based on case-specific factors, including deductions for 'excessive, redundant, or otherwise unnecessary hours.'" *Id.* (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)).  "In so doing, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (internal quotation marks and citation omitted).  "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Cesario v. BNI Constr., Inc.*, No. 07 Civ. 8545 (LLS)(GWG), 2008 WL 5210209, at *7 (S.D.N.Y. Dec. 15, 2008) (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)).

Upon review of counsel's billing records, the claimed number of hours are unreasonable and warrant reduction.  Generally, billing 116.2 hours of work on a default wage-and-hour case in which the defendants failed to respond to the complaint is excessive in this District. *See Maldonado v. La Nueva Rampa, Inc.*, No. 10 Civ. 8195 (LLS) (JLC), 2012 WL 1669341, at *14 (S.D.N.Y. May 14, 2012) (noting that the "high-end amount of hours spent" on a default wage-and-hour case "is no more than 55 hours total.") (collecting cases).  More specifically, counsel's billing records contain instances of excessive and duplicative work.  For example, counsel spent a combined 23.1 hours drafting, reviewing, and filing their motion for attachment. (Docket No. 45-1).  They also billed 22.6 hours on Plaintiffs' default motion papers. (*Id.*).  However, the facts and legal arguments therein are largely duplicative of those within the motion for attachment, (*id.*), and presumably the "dozens" of other wage-and-hour cases that Dodson has handled during her career. (*See* Dodson Attorneys' Fees Decl. at ¶ 4).  Furthermore, Gastman billed his full hourly rate for clerical tasks such as reviewing Electronic Court Filing ("ECF") entries that were

filed by his own firm. *See Tatum v. City of New York*, No. 06-CV-4290 (PGG)(GWG), 2010 WL 334975, at *9 (S.D.N.Y. Jan. 28, 2010) (awarding paralegal rates for time spent reviewing the case's progress on ECF).  Moreover, Hodges excessively billed for a number of tasks.  For example, Hodges billed a full hour for updating one client's contact information on several occasions. (Docket No. 45-1 at 10).

"In lieu of making minute adjustments to individual timekeeping entries, a court may make across-the-board percentage cuts in the number of hours claimed, 'as a practical means of trimming fat from a fee application.'" *Heng Chan v. Sung Yue Tung Corp.*, No. 03 CIV. 6048 (GEL), 2007 WL 1373118, at *5 (S.D.N.Y. May 8, 2007) (quoting *In re Agent Orange Prod. Liability Litig.*, 818 F.2d 226, 237 (2d Cir.1987)).  Accordingly, the undersigned recommends reducing all time charged by thirty-five percent considering the excessive hours spent on this matter and the procedural posture of this case. *See Maldonado*, 2012 WL 1669341 at *14 (reducing 171.8 hours spent by seventy percent in default wage-and-hour case).  After incorporating the recommended reductions of hourly rates and hours worked, the undersigned recommends that the court award Plaintiffs $14,076.10 in attorneys' fees.

### iii.  Costs

Plaintiffs seek to recover costs in the amount of $2,472.69 for court filing fees, process server fees, and delivery charges. (Dodson Attorneys' Fees Decl. at ¶ 32); (Docket No. 45-1 at 12). Plaintiffs "[are] entitled to 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Polit*, 2017 WL 1373907, at *9 (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)). The costs sought by Plaintiffs appear reasonable. Therefore, I recommend that the court award costs in the amount of $2,472.69.

Accordingly, I recommend that the court award Plaintiffs $16,548.79 in attorneys' fees and costs.

## III.  CONCLUSION

For the foregoing reasons, I respectfully recommend that the court award Plaintiffs damages against Defendants, jointly and severally, in the amount of $102,283.79, representing: (i) $33,060.00 in damages to Francisco Taveras, (ii) $22,440.00 in damages to Francisco Mercedes, (iii) $21,235.00 in damages to Wayne Johnson, (iv) $9,000.00 in damages to Jayden Perdomo, and (v) $16,548.79 in attorney's fees and costs.  Additionally, I respectfully recommend that the Clerk of the Court calculate prejudgment interest as described herein, and that "if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." NYLL § 198(4).

The Clerk of Court is directed to mail a copy of this Report and Recommendation to the *pro se* Defendants at the following addresses:[24]

> Peter George Pergola
> 85 Executive Boulevard
> Elmsford, New York 10523
>
> Peter M. Pergola
> 85 Executive Boulevard
> Elmsford, New York 10523
>
> Northeast Landscape & Masonry Associates, Inc.
> Attention: United States Corp. Agents, Inc.
> 7014 13th Avenue
> Suite 202
> Brooklyn, New York 11228
>
> Northeast Landscape & Masonry Associates, Inc.
> New York Department of State
> One Commerce Plaza
> 99 Washington Avenue

---

[24] These are the last known addresses of Defendants according to affidavits of service filed by Plaintiffs. (Docket Nos. 9-10, 36-37, 48-49).

Albany, New York 12231

N-East Contracting, Inc.
New York Department of State
One Commerce Plaza
99 Washington Avenue
Albany, New York 12231

## IV.  NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from receipt of this Report and

Recommendation to serve and file written objections. *See* Fed. R. Civ. P. 6(a) and (d) (rules for

computing time).  If copies of this Report and Recommendation are served upon the parties by

mail, the parties shall have seventeen (17) days from receipt of the same to file and serve written

objections. *See* Fed. R. Civ. P. 6(d).  Objections and responses to objections, if any, shall be filed

with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Cathy

Seibel at the United States District Court, Southern District of New York, 300 Quarropas Street,

White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Requests for extensions of time to file objections must be made to the Honorable Cathy Seibel and not to the undersigned.  Failure to file timely objections to this Report and Recommendation will result in a waiver of objections and will preclude later appellate review of any order of judgment that will be rendered. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b), 6(d), 72(b); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

Dated:   December 28, 2018
         White Plains, New York

RESPECTFULLY SUBMITTED:

JUDITH C. McCARTHY
United States Magistrate Judge